**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE**

| | | |
|---|---|---|
| CATFISH FARMERS OF AMERICA, *ET AL.*, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Ct. No. 22-00125 |
| UNITED STATES, | ) ) | **NON-CONFIDENTIAL** |
| Defendant, | ) ) ) | |
| and | ) ) | |
| NTSF SEAFOODS JOINT STOCK COMPANY, *ET AL.,* | ) ) ) ) | |
| Defendant-Intervenors. | ) ) | |

*DEFENDANT-INTERVENORS' RESPONSE TO PLAINTIFFS'
CATFISH FARMERS OF AMERICA, ET AL.'S MOTION FOR
JUDGMENT ON THE AGENCY RECORD*

Robert G. Gosselink
Jonathan M. Freed
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Ste. 500
Washington, D.C. 20003
(202) 223-3760

*Counsel to Defendant-
Intervenor NTSF Seafoods
Joint Stock Company*

Matthew J. McConkey
**MAYER BROWN LLP**
1999 K Street, NW
Washington, D.C. 20006
(202)-263-3235

*Counsel to Defendant-Intervenor*
*Nam Viet Corporation*


Robert L. LaFrankie, II
**CROWELL & MORING, LLP**
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202)-624-2868

*Counsel to Defendant-Intervenor*
*Green Farms Seafood Joint Stock*
*Company*

Dated:  February 10, 2023

**Court No. 22-00125**

# TABLE OF CONTENTS

I. INTRODUCTION ...............................................................................3

II. ARGUMENT ...................................................................................3

A. Commerce's Selection of the Primary Surrogate Country Was
Supported by Substantial Evidence and Was In Accordance With
Law ...............................................................................................3

B. Commerce Properly Relied on NTSF's Zero AD Rate to Calculate
Green Farms' Separate Rate ...........................................................9

C. CFA Has Abandoned its Argument Regarding NAVICO in Count
Five of its Complaint.....................................................................10

III. CONCLUSION ...............................................................................12

i

**Court No. 22-00125**

# TABLE OF AUTHORITIES

*CASES*

*United States v. Great Am. Ins. Co. of New York,* 738 F.3d 1320,1328 (Fed. Cir. 2013) ........................................................... 3

*SmithKline Beecham Corp. v. Apotex Corp.,* 439 F.3d 1312 (Fed. Cir. 2006) ........................................................... 11

*Hor Liang Indus. Corp. v. United States,* 337 F. Supp. 3d 1310 (Ct. Int'l Trade 2018) ...................................... 11

*Reedy v.* Werholtz, 660 F.3d 1270, 1274 (10th Cir. 2011)....................... 11

*Estate of Duncan v. Commissioner of Internal Revenue Service,* 890 F.3d 192 (5th Cir. 2018) ............................................................... 11

*ADMINISTRATIVE DETERMINATIONS*

*Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020*, 87 Fed. Reg. 15912 (Mar. 21, 2022) and and accompanying *Issues and Decision Memorandum* (Mar. 09, 2022) .............................................................................. 2–5

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Issues and Decision Memorandum for the Final Results of the Ninth Administrative Review and Aligned New Shipper Review* (Mar. 28, 2014) .................................................................................................. 4

**Court No. 22-00125**

## Glossary of Case-Specific Acronyms and Abbreviations

| | |
|---|---|
| **NTSF** | NTSF Seafoods Joint Stock Company |
| **CFA** | Catfish Farmers of America, <u>et al.</u> |
| **AD** | Antidumping Duty |
| **IDM** | Issues and Decision Memorandum |
| **FOP** | Factor of Production |

Court No. 22-00125

### *DEFENDANT-INTERVENORS' RESPONSE TO PLAINTIFFS' CATFISH FARMERS OF AMERICA, ET AL.'S MOTION FOR JUDGMENT ON THE AGENCY RECORD*

## I.   INTRODUCTION

Defendant-Intervenors NTSF Seafoods Joint Stock Company ("NTSF"), Green Farms Seafood Joint Stock Company ("Green Farms"), and Nam Viet Corporation ("NAVICO"), collectively, ("Defendant-Intervenors") hereby submit their response to the Rule 56.2 Memoranda submitted by Plaintiffs Catfish Farmers of America, et al. ("CFA") filed on October 21, 2022, ECF No. 39 (hereinafter, "CFA Br."). Defendant United States responded to CFA's claims and arguments in "Defendant's Response to the Consolidated Plaintiffs' Rule 56.2 Motions for Judgment on the Agency Record," filed January 27, 2023, ECF No. 42 (hereinafter, "Def. Br.").

CFA contests various aspects of Commerce's final results of the seventeenth administrative review of the antidumping duty ("AD") order placed on certain frozen fish fillets from Vietnam in *Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020*, 87 Fed. Reg. 15912 (Mar.

**Court No. 22-00125**

21, 2022), P.R. 447, APPX____("*AR17 Final Results*"), and the

accompanying *Issues and Decision Memorandum for the Final Results*

*of the seventeenth Antidumping Duty Administrative Review; 2017–*

*2018*, (Mar. 09, 2022), P.R. 444, APPX_____ ("*AR17 IDM*").

Defendant-Intervenors will not repeat the arguments set forth in

Defendant's response.  Instead, Defendant-Intervenors limit this

response to only specific legal or factual points to supplement

Defendant's response on those claims and arguments raised by CFA

that pertain to Defendant-Intervenors.

For the reasons set forth below, CFA's arguments challenging the

disputed final determination of the U.S. Department of Commerce

("Commerce"), as it applies to NTSF and Green Farms, should be

rejected because Commerce's determination as to the issues discussed

herein were supported by substantial record evidence and were

otherwise in accordance with law.

Further, in its opening brief, CFA failed to address the issue

raised in Count Five of its Complaint with regard to NAVICO, and

therefore has waived its ability to argue this issue, and it should

therefore be deemed abandoned. Indeed, as set forth below and noted in

2

**Court No. 22-00125**

Defendant's response, it is long established that "arguments that are not appropriately developed in a party's briefing may be deemed waived." Def. Br. at fn. 2, ECF No. 42 (citing *United States v. Great Am. Ins. Co. of New York*, 738 F.3d 1320,1328 (Fed. Cir. 2013) (internal quotations omitted)).

## II.   ARGUMENT

### A. Commerce's Selection of the Primary Surrogate Country Was Supported by Substantial Evidence and Was In Accordance With Law

In the *AR17 Final Results* and accompanying *IDM*, Commerce selected India as the primary surrogate country, finding that (1) India is economically comparable to Vietnam, (2) India is a significant producer of identical and comparable merchandise, and (3) India provides superior data for valuing Factors of Production ("FOPs"). *AR17 IDM*, at 40-57, APPX____.

NTSF agrees with Defendant's arguments that Commerce reasonably determined to use India as the primary surrogate country. *See* Def. Br. at 12–39.  We hereby supplement Defendant's response with a few additional points to assist the Court in its consideration of this issue.

**Court No. 22-00125**

First, CFA argues that Commerce acted arbitrarily because it offered insufficient reasons for treating "similar situations" differently when in past reviews Commerce relied on Indonesia as a surrogate country even when Indonesia was not listed among the countries that are economically comparable to Vietnam.  CFA Br. at 13.  CFA's argument is unpersuasive and misleading.

This administrative review presents a different situation from past reviews of the AD order.  In certain previous reviews, Commerce relied on Indonesia as the primary surrogate country even when it was not listed as economically comparable to Vietnam. *AR17 IDM*, at 42-43, APPX_____.  However, in those instances, Commerce chose Indonesia as Vietnam's surrogate country because the surrogate data from countries listed as economically comparable to Vietnam was either unavailable or of low quality.  *See e.g., Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Issues and Decision Memorandum for the Final Results of the Ninth Administrative Review and Aligned New Shipper Review*, (Mar. 28, 2014) at Comment I.A (noting that, although Indonesia was not on the surrogate country list, "the data considerations, explained in greater detail below, weigh in favor of

**Court No. 22-00125**

Indonesia's selection over any of the countries that were initially

identified.").

Unlike those segments, the situation is factually distinct in this

administrative review.  Here, substantial record evidence supports

Commerce's determination that India is a significant producer of

comparable merchandise and that the data available from India is of

sufficient quality and reliability.  *AR17 IDM*, at 43, APPX_____.

Accordingly, CFA's argument that Commerce was arbitrary because it

treated "similar situations" differently lacks merit.  The situations are

not similar.

Second, the CFA's contention that India is not a significant producer

of identical or comparable merchandise is patently false.  CFA Br. at 18-

23. Specifically, the record contains information from the Food and

Agriculture Organization of the United Nations (UNFAO) that shows

that India produces pangasius. NTSF Surrogate Country Submission,

Exhibit 1, (April 20, 2021), P.R. 188, APPX_____.  Additionally, the

record includes UN Comtrade export data for all countries economically

comparable to Vietnam for classification 0304.62 covering "Fish fillets;

frozen, catfish (Pangasius spp., Silurus spp., Clarias spp., Ictalurus

**Court No. 22-00125**

spp.)".  NTSF Surrogate Country Rebuttal Comments, Exhibit 3, (April

27, 2021), P.R. 220, APPX_____.  This data shows India exported

significant amounts of frozen catfish fillets in both 2019 and 2020.  In

fact, India's exports of pangasius fillets were higher than Indonesia.

India had 664,300 kilograms of exports of pangasius frozen fillet during

2019, whereas Indonesia only had 140,000 kilograms of exports in 2019.

*Id.*  In other words, India's exports were almost five times higher than

the exports made from Indonesia in 2019.  Furthermore, Petitioner's

proposed primary surrogate country (*i.e.*, Indonesia) had no exports of

frozen pangasius fillets in 2020.  *Id.*

     For these reasons and those addressed in Defendant's response,

Commerce's conclusion that India is a significant producer of identical

or comparable merchandise is supported by substantial evidence.

     Third, CFA contends that Indonesia provides surrogate values

that are superior to the values obtained from India.  CFA Br. at 24–26.

CFA essentially argues that, because Indonesia could provide allegedly

superior data on certain factors and supply multiple financial

statements, Commerce should disregard its surrogate country selection

practice described in the Policy Bulletin 04.1.  *See id.* at 24–35.  Even if

**Court No. 22-00125**

CFA's suggestion did not conflict with Commerce practice, the CFA's argument is based on false assertions of fact.

Moreover, the Indonesia data proposed by the Petitioners on the record of this administrative contains major shortcomings. The annual fishery statistics published by Ministry of Marine Affairs and Fisheries ("MMAF") provided by the CFA is particularly concerning because of the corruption within the MMAF. *See* NTSF's Rebuttal Comments at Exhibit 6 (May 24, 2021), 286-287 P.R., APPX__. In November of 2020, the Corruption Eradication Commission in Indonesia arrested the Minister of the MMAF and sixteen other officials because of widespread corruption within the MMAF. *Id.* The corruption found at the MMAF undermines the reliability of the data collected by this entity. Setting aside the corruption issues of MMAF, the Indonesian pangasius industry as a whole is subsidized by the Indonesian government which renders prices in the Indonesian fishery industry that are not market oriented. News reports on the record of this administrative review describe the breadth of government intervention within the fisheries industries in Indonesia. Specifically, the MMAF has provided business capital loans totaling Rp. 4.3 billion, including assistance of 115

7

**Court No. 22-00125**

thousand catfish seeds and 30 thousand whole catfish. Id. at Exhibit 3.

Additionally, MMAF guarantees the availability of local vegetable

protein-based raw materials for Indonesian fisheries which reportedly

alters production costs by 25 percent. *Id.* at Exhibit 2. These factors

weigh heavily in favor of disregarding the Indonesia data.

Finally, Petitioners argue Indian data on the record is unreliable

because Indian data was obtained from one private survey. However,

this contention is false. The record contains multiple reliable sources of

data from India to value the main inputs in this administrative review.

Specifically, for whole fish, the record contains: (1) whole fish prices

published in the Indian publication Undercurrent News; (2) the July

2019 edition of the Indian Fishing Chimes publication; and (3) fish

prices from the published Indian Eenadu newspaper. *See* NTSF SV

Submission at Exhibits SV-5 - SV-11 (May 10, 2021), P.R. 264-278,

APPX___; NTSF SV Submission at Exhibit 1-5 (August 02, 2021) P.R.

354-356, APPX___.  For fingerling and fish feed, the record contains: (1)

fingerling/fish feed prices published in Undercurrent News; (2)

fingerling/fish prices in the July 2019 edition of Fishing Chimes; and,

(3) feed prices from an Indian feed producer. *Id.*  Furthermore, the

**Court No. 22-00125**

record contains contemporaneous financial statements from two Indian

seafood processors: Ananda Enterprises (India) Private Limited and

MMC Exports Limited (MMC). *See* NTSF SV Submission at Exhibits

SV-19 (May 10, 2021), P.R. 264-278, APPX___.  As evidenced above, the

record contains several reliable and credible Indian sources to calculate

surrogate values to value NTSF's factors of production.  Thus, for the

final results of this administrative review, the Department should

continue to use India as the primary surrogate country because the

Indian data on the record are the best available information.

**B.** ***Commerce Properly Relied on NTSF's Zero AD Rate to Calculate Green Farms' Separate Rate***

CFA argues that Green Farms' separate rate calculation should be

remanded because it was based, in part, on NTSF's zero AD rate, which

CFA claims relied on an erroneous surrogate country and surrogate

value.  CFA Br. at 35-36.  Defendant United States argues correctly in

its response brief that the Court should reject CFA's argument

regarding Green Farms' separate rate because Commerce properly

Court No. 22-00125

calculated NTSF's zero AD rate using Indian surrogate values.  *See* Def.

Br. at 59.[1]

   Nevertheless, Green Farms disagrees with that related part of

Defendant United States' response brief on this issue arguing that

Commerce properly calculated Green Farms' separate rate using a

"simple average" of the NTSF zero AD rate and the $3.87 per kilogram

AD rate assigned to East Sea Seafoods.  Def. Br. at 64-65.  Green Farms

is addressing the substance of this related issue in its final reply brief to

be filed in *Green Farms Seafood Joint Stock Company v. United States*,

No. 22-00092 (Ct. Int'l Trade), which has been consolidated, in part,

with this instant case.

## C. *CFA Has Abandoned its Argument Regarding NAVICO in Count Five of its Complaint*

   In Count Five of its Complaint, Plaintiff claimed that Commerce's

refusal to collapse NAVICO with another company under review was

not supported by substantial evidence, inadequately explained, and

otherwise contrary to law. Complaint at ¶20. However, CFA failed to

---

[1] As discussed earlier in this brief and in Defendant United States response
 brief, Commerce's calculation of NTSF's underlying zero AD rate based on
 Indian surrogate values was supported by substantial evidence and
 otherwise in accordance with law.  *See e.g.,* Def. Br. at 23-46 and 59.

**Court No. 22-00125**

raise this issue in its opening brief and therefore it has waived its

ability to argue this issue. As supported by law, an issue not

"mentioned" or "argued" in the opening brief is "therefore abandoned."

*Reedy v.* Werholtz, 660 F.3d 1270, 1274 (10th Cir. 2011). Indeed, law has

long maintained that arguments not raised in the opening brief are

considered waived. *Hor Liang Indus. Corp. v. United States*, 337 F.

Supp. 3d 1310 (Ct. Int'l Trade 2018) ("Issues adverted to in a

perfunctory manner, unaccompanied by some effort at developed

argumentation, are deemed waived.") (citations omitted); *see also*

*SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed.

Cir. 2006) ("{A}rguments not raised in the opening brief are waived.")

(citations omitted).

Since CFA has made no mention of the issue in its opening brief

and has presented no arguments to support it, CFA cannot raise this

issue in its reply brief. *See Reedy*, 660 F.3d at 1274 ("{A} party waives

issues and arguments raised for the first time in a reply brief.") (citation

omitted); *see also Estate of Duncan v. Commissioner of Internal Revenue*

**Court No. 22-00125**

*Service*, 890 F.3d 192, 202 (5th Cir. 2018) ("{A}rguments raised for the first time in a reply brief).

## III. CONCLUSION

For the reasons set forth above, we respectfully request that the Court deny Plaintiff's, CFA's, motion for judgment upon the agency record and enter judgment with respect to the issues contested by CFA in favor of the United States. We further request that the Court hold that CFA has abandoned the issue in Count Five of its Complaint.

Respectfully submitted,

/s/ Jonathan M. Freed
Robert G. Gosselink
Jonathan M. Freed

**TRADE PACIFIC PLLC**
700 Pennsylvania Ave SE Suite 500
Washington, D.C. 20003
(202) 223-3760

*Counsel to Defendant-Intervenor*
*NTSF Seafoods Joint Stock Company*

/s/ Matthew J. McConkey

Matthew J. McConkey
**MAYER BROWN LLP**
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3235

12

**Court No. 22-00125**

*Counsel to Defendant-Intervenor Nam Viet Corporation*

/s/ Robert L. LaFrankie, II
Robert L. LaFrankie, II
**CROWELL & MORING, LLP**
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 624-2868

*Counsel to Defendant-Intervenor Green Farms Seafood Joint Stock Company*

Dated: February 10, 2023

13

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CATFISH FARMERS OF AMERICA, *ET AL.*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Ct. No. 22-00125 |
| UNITED STATES, | ) ) ) |
| Defendant, | ) ) |
| and | ) |
| NTSF SEAFOODS JOINT STOCK COMPANY, *ET AL.,* | ) ) ) |
| Defendant-Intervenors. | ) ) ) |

## CERTIFICATE OF COMPLIANCE

The undersigned counsel at Trade Pacific PLLC, Mayer Brown LLP, and Crowell & Moring, LLP, hereby certify that the Defendant-Intervenors' Response to Plaintiffs' Catfish Farmers of America, et al.'s Motion for Judgment on the Agency Record, dated February 10, 2023, complies with the word-count limitation described in the Standard Chambers Procedures. The memorandum of law contains 2,047 words according to the word-count function of the word-processing software used to prepare the memorandum.

**Court No. 22-00125, Certificate of Compliance**          **Page 2**

Respectfully submitted,

/s/ Jonathan M. Freed
Robert G. Gosselink
Jonathan M. Freed

**TRADE PACIFIC PLLC**
700 Pennsylvania Ave SE Suite 500
Washington, D.C. 20003
(202) 223-3760

*Counsel to Defendant-Intervenor*
*NTSF Seafoods Joint Stock Company*

/s/ Matthew J. McConkey

Matthew J. McConkey
**MAYER BROWN LLP**
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3235

*Counsel to Defendant-Intervenor Nam*
*Viet Corporation*

/s/ Robert L. LaFrankie, II
Robert L. LaFrankie, II
**CROWELL & MORING, LLP**
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 624-2868

*Counsel to Defendant-Intervenor Green*
*Farms Seafood Joint Stock Company*

Dated:  February 10, 2023